UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.                                                      Case No. 8:08-cv-899-T-17MAP

USA FINANCIAL, LLC, *et al.*,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

The Federal Trade Commission brings this action against Defendants for violations of §§ 13(b) and 19 of the Federal Trade Commission Act, 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101 - 6108, arising out of the alleged sale and telemarketing of advance-fee credit cards to consumers. After receiving complaints from several regulatory agencies and the Better Business Bureau, the FTC filed a complaint and a motion for a temporary restraining order alleging that Defendants engaged in a deceptive scheme to defraud thousands of consumers nationwide through the telemarketing of a advance-fee credit cards. As a consequence, the district judge granted the FTC's motion for a temporary restraining order against Defendants, which included provisions freezing the assets of the corporate and individual Defendants and appointing a receiver (doc. 10).[1] Defendant John F. Buschel, Jr., now moves this Court for a release of funds from the assets frozen pursuant to the TRO in order to pay his living expenses and attorney fees (doc. 29). After a hearing on the matter, I recommend that the asset freeze remain effective with the exception of

---

[1] The parties have stipulated that the TRO will remain in effect until a decision by the court on preliminary injunction (doc. 16).

those assets located in a Wachovia Bank account[2] on behalf of Consumer Trust Financial.[3]

   *A. Discussion*

       *1. alleged scheme*

Defendants USA Financial, LLC, and American Financial Card, Inc., engaged in the sale and telemarketing of cards extending lines of credit to consumers, which the FTC contends constituted advance-fee credit cards.[4]  Basically, the FTC alleges that USA Financial and American Financial operated schemes where one of their telemarketers made unsolicited phone calls, often repeatedly, to individuals with poor credit histories and offered those individuals a card with a credit limit around $2,000 for an advance fee of $200.  A number of those called have made sworn statements stating that they were misled to believe that the cards offered by USA Financial and American Financial could be used to withdraw money from an ATM, used for cash advances, and used for purchases similar to that of a general purpose credit card such as a MasterCard or Visa.  As a prerequisite to receiving the card, the representatives informed the individuals that it would cost $200 to either obtain or activate the card.  When the individuals expressed reservations regarding the $200, the representatives assured the individuals that they

---

[2]   The parties only reference a bank account at Wachovia Bank without providing an account number.  If the district judge adopts my recommendation to release the funds located in the Wachovia Bank account on behalf of Consumer Trust, I recommend that the district judge require Buschel to inform the court of the specific account number for Consumer Trust with Wachovia Bank.

[3]   The district judge referred this matter to me for issuance of a Report and Recommendation as to the appropriate disposition of the motion pursuant to 28 U.S.C. § 636 (doc. 35).

[4]   American Financial Card, Inc. was  formerly known as Capital Financial, Inc.  In this report, American Financial to refer to both American Financial and Capital Financial.

would receive four $50 vouchers that they could use to pay down the balance of purchases made using the card.

To complete the process, the representatives explained that they needed to confirm that the individuals had an existing checking account and therefore needed their checking account information. After the individuals gave the representatives their checking account information, the representatives played a tape that rapidly ran through pertinent information relating to the USA Financial or American Financial account and card. The individuals would then authorize the debit of $200 to their checking account after which USA Financial or American Financial would withdraw the $200 from each individual's account. Unbeknownst to some of them, however, in exchange for this $200 fee, the individuals received a catalog card that could only be used to purchase items from certain company-provided catalogs rather than a general-purpose credit card such as a MasterCard or Visa.

When some of the individuals requested to cancel the card, the representatives informed the individuals that the company could cancel the card, but that they would need to send a letter to the dispute department if they wanted a refund of their $200. In response to those letters, the companies typically would send letters to the individuals rejecting their requests for a refund. Astonishingly, the Receiver "did not discover a single instance in which USA Financial sent a refund to a customer unless the customer had made a complaint to the Better Business Bureau, a state regulatory agency or attorney general's office, or a private attorney" (doc. 58).[5] Many of the

---

[5] In his status report, the Receiver noted that although American Financial appears to have largely ceased operating as of the end of 2007, it engaged in a virtually identical business to USA Financial. Therefore, a strong likelihood exists that American Financial engaged in the same refund policies and practices.

individuals did file complaints with the Better Business Bureau, the Florida Attorney General's Office, and state regulatory agencies amongst others. In fact, more than 700 complaints were filed against Defendants with the Better Business Bureau alone.

During the course of its operation, Defendant Buschel acted in a management capacity for American Financial. He signed various documents on behalf of American Financial as vice president, general manager, and manager. Currently, he works as the Chief Operating Officer for Consumer Trust Financial and also acts as a signatory on Consumer Trust's bank account with Wachovia Bank. Although the FTC agrees that Consumer Trust should not come within the ambit of the TRO, Wachovia Bank has frozen the assets of Consumer Trust. Prior to the asset freeze, Buschel's current position with Consumer Trust had been his main source of income.

Buschel now requests the Court release funds from the assets frozen pursuant to the terms of the TRO for the purpose of paying his living expenses and attorney fees in defense of this action. Specifically, Buschel requests a monthly allowance of $9,822 for living expenses and a total of $50,000 for attorney fees (docs. 31, 52).[6] The FTC strenuously objects to the release of any funds for either living expenses or attorney fees and argues that Buschel should receive no reprieve from the asset freeze regardless of the purpose for which he seeks the funds.

  2. *Buschel's personal assets*

Pursuant to § 13 of the Federal Trade Commission Act, 15 U.S.C. § 53(b), a district court has the authority to temporarily freeze personal assets as an incident to its express statutory authority to issue a permanent injunction. *F.T.C. v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1432

---

[6] Initially, Defendant requested $10,000 per month for living expenses but later filed his amended financial information listing his monthly living expenses as $9,822 (docs. 31, 52).

(11th Cir. 1984)(per curiam); *See also F.T.C. v. Gem Merchandising Corp.*, 87 F.3d 466, 469 (11th Cir. 1996). As a corollary to that authority, a court may also release or lower the amount of assets frozen. *See S.E.C. v. Duclaud Gonzalez de Castilla*, 170 F.Supp.2d 427, 429 (S.D.N.Y. 2001)(recognizing the authority of the court to freeze assets in the context of securities litigation). Nevertheless, a court may exercise its discretion to forbid or limit payment of living expenses or attorney fees out of frozen assets. *See Commodity Futures Trading Commission v. Noble Metals International, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995).[7] For example, if the frozen assets fall short of the amount needed to compensate consumers for their losses, a court is within its discretion to deny an application for living expenses and attorney fees. *See Id*. The continued asset freeze provides a means of preserving funds for effective final relief, such as disgorgement.[8] *See S.E.C. v. ETS Payphones, Inc.*, 408 F.3d 727, 734 (11th Cir. 2005). Moreover, while parties to litigation generally may spend their resources as they see fit to retain counsel, they may not use their victims' assets to hire counsel to help them retain the fruits of their violations. *See generally S.E.C. v. Quinn*, 997 F.2d 287, 289 (7th Cir. 1993).

Buschel has failed to show that any of his personal earnings were derived independently

---

[7] As the Ninth Circuit has noted, "[a]ny doubt as to the constitutionality of freezing assets and precluding entirely their use for payment of attorney fees in circumstances even more extreme than this case have now been resolved by the Supreme Court's recent decision in *United States v. Monsanto,* 491 U.S. 600, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989) and *Caplan v. Drysdale, Chartered v. United States*, 491 U.S. 617, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989)." *Noble Metals*, 67 F.3d at 778 (discussing the reasonableness of attorney fees in an action brought by the FTC alleging deceptive trade practices against a seller of advertising specialty items and its president).

[8] Indeed, the Eleventh Circuit has held that courts may order disgorgement of defendants' ill-gotten gains pursuant to Section 13(b). *Gem Merchandising*, 87 F.3d at 470. Disgorgement serves the dual purpose of providing consumer redress and depriving wrongdoers of their ill-gotten gains. *Id.*

from any alleged ill-gotten gains. This failure to show separately derived funds justifies the continued asset freeze to augment funds needed to provide restitution to victims of Defendants' alleged deceptive sales and telemarketing schemes and to permit disgorgement of alleged ill-gotten gains. Without a continued asset freeze of Buschel's personal accounts, it appears unlikely that funds will be available to satisfy any final order granting restitution to consumers affected by the alleged violations. Here, the FTC estimates that the combined amount of Defendants' alleged ill-gotten gains exceeds $25 million. Currently, the Receiver approximates the total amount of assets frozen for all Defendants as $700,000 in addition to a party bus and a stretch limousine. Where, as here, the frozen assets fall far below the amount needed to compensate the consumers, the court should exercise its discretion to deny a request to release funds for living expenses or attorney fees. Additionally, when addressing requests for living expenses, courts look for evidence of the defendant's overall assets or income. *S.E.C. v. Dowdell,* 175 F.Supp.2d 850, 854 (W.D.Va. 2001). Typically a court will deny such a request where the defendant requests funds for luxuries rather than necessities or where the defendant has other sources of income. *See Id.* These factors weigh heavily against releasing any funds for Buschel's living expenses. While Buschel has reduced the amount he claims constitute his monthly expenses, he still requests funds for luxuries rather than necessities.[9] Also, based on my recommendation to release Consumer Trust's assets currently frozen by Wachovia Bank as detailed below, Buschel will have an alternate source of income outside of his frozen assets from which he can pay for his living expenses and attorney fees.

---

[9] For example, Buschel requests $400 for jujitsu training and $120 for a Lifestyles gym membership.

Based on the foregoing, I recommend the continued freeze of Buschel's personal assets existing as of the date the TRO was entered and of all assets acquired by Buschel after the effective date of the TRO that are derived from or are otherwise related to the sale or offering for sale of purported advance-fee credit cards.

*3. Consumer Trust's assets*

Nowhere does the TRO mention Consumer Trust or any assets of Consumer Trust. In fact, the FTC concedes that the TRO does not apply to Consumer Trust. Nonetheless, Wachovia Bank has frozen Consumer Trust's assets located in an account with the bank. While the parties speculate that Wachovia froze the assets pursuant to the TRO due to Buschel's position as a signatory on that account, neither party has received confirmation from Wachovia Bank as to the reasoning behind the freezing of Consumer Trust's assets. Thus, since the FTC has not currently filed a claim against Consumer Trust in this action or any other related action and concedes that the TRO does not apply to Consumer Trust, I find no reason for those assets to remain frozen. Therefore, I recommend that the assets located in Consumer Trust's account with Wachovia Bank be released.

*C. Conclusion*

Based on the foregoing, it is hereby

RECOMMENDED:

1. The district court should release those assets located in the current Wachovia bank account on behalf of Consumer Trust Financial.

2. Defendant should identify for the district court the specific account number for the account held by Consumer Trust Financial at Wachovia Bank.

3. All other assets should remain frozen pursuant to the terms of the TRO.

IT IS SO REPORTED on this 21st day of July, 2008.

*Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

Copies furnished to:
Hon. Elizabeth Kovachevich
Counsel of Record